May it please the court, counsel. Mr. Anglin's sole issue on appeal is whether the use of force that was employed by the Milwaukee Police Department and federal officials when they took him into custody exceeded the permissible scope allowable under Terry and was actually became a de facto arrest at the moment that they grabbed his arm, pulled him out of the vehicle he was sitting in, forced him to the ground to lie prone on the street in December, handcuffed him before frisking him. Does it make any difference? Because the facts suggest probable cause. So if it was a de facto arrest, it's supported by probable cause, the police are interrupting an imminent armed robbery. If it were supported by probable cause, then it would be. But the magistrate judge in this case did not find that the arrest was supported by, or that the detention was supported by probable cause. Well, right, that doesn't bind us. No, I know, I know. And nor did the district court judge. That doesn't bind us either. I realize that. The reason I think that they didn't find that there was probable cause is because of the lack of reliability of the information that the police had. Actually, it turned out to be really reliable. And there's a lot of language in Judge Callahan's recommendation opinion that suggests that everything the informant said turned out to be true, or almost everything. Well, the informant was brand new. The informant had first met with Agent Hankins, the ATF agent, on December 10th. He had called out of the blue, indicating that he had information that Mr. Anglin was going to commit an armed robbery with his brother. Agent Hankins met with a Milwaukee police officer and the informant on that day gathered information, checked back with him again for only the second time on December 16th. And it was the very next morning that this operation took place. The agent Hankins indicated that he did not know even anything about the informant prior to this operation taking place. He didn't know anything about his prior record except that he was in a halfway house finishing a sentence for bank robbery. But he didn't know anything about a prior record. He stated in his testimony during the preliminary hearing that he didn't know whether the informant was truthful or not at that point. And so it was a real unreliable informant who predicted ultimately that he would get picked up by Michael Anglin on Fond du Lac in the morning and that they would proceed to do a robbery. Well, he was right about getting picked up by Michael Anglin, but other than that, I would submit that he wasn't really right about a whole lot. Well, everything else he told the officer was checked out to the extent that it could be verified. There were some things that couldn't be verified. And they were innocent details. The kind of car that Michael Anglin was driving, what Dave Anglin was planning on doing in the morning to go visit his girlfriend or shovel snow. Right. I mean, the fact that they were innocent details doesn't mean that it has no bearing here. It demonstrated that the informant was giving accurate information. So to the extent that he was previously unknown to law enforcement tends to fall away as a significant factor here because the information he did give them all checked out. And the Anglins were in motion in precisely the way that he said they would be. And I don't know if that's necessarily true because Michael Anglin was arrested at 8.55 along with the informant. It wasn't until about 10.15 that Dave Anglin strolled out of the house of his girlfriend with a teenage boy, a baby. They were getting in a car. The agents took him into custody and he had a gun. But I don't think that the court can take the fact that he had a gun into consideration when they're evaluating whether there was a reasonable suspicion of criminal activity or probable cause. And the fact that there were innocent details that were provided by the informant, the police were completely unable to use that informant to corroborate any details that would implicate that there actually were going to be a robbery. For example, the CI didn't provide them with a recording. The CI didn't introduce an undercover agent to the Anglins as they had asked them to. Right, there wasn't time. This was very early in the investigation and the plan on the Anglins part was accelerated unexpectedly. So there wasn't time to wire anybody. It was on December 10th that the agent suggested that he introduce them to an undercover. So he had it all the way until the 16th to work that out. They could have recorded a phone call, for example. They could have done all kinds of things to corroborate what the informant was telling them between the 10th and the 16th, but they didn't. So I think that the information that there was no probable cause, because of the shaky information that had been provided by the CI. But then going to the, and assuming that there were not probable cause, but there was reasonable suspicion, which Mr. Anglin doesn't challenge, then the question is, did the actions of the police exceed what was required for them to dispel? There are suspicions in the least restrictive means possible, which is required under Terry and a lot of sub-circuit cases. In this case, they grabbed Mr., it may not sound like much to many people being grabbed, but when there's a grabbing by a police officer, that raises the bar to another level. It's incremental. There was no simple pat-down where they asked him to step out of the car, like in many of the cases that have been cited in the briefs. Step out of the car, put your hands up. Well, this is where context becomes really important. If there's a concession that there's reasonable suspicion of an imminent armed robbery, then laying hands on this guy after he got out of the car and cuffing him seems really quite reasonable under the circumstances. The CI had reported that they were in possession of semi-automatic rifles, right, as well as handguns? Yes, and I see them until rebuttal time, but I would just address that. They pulled Michael Anglin over in the very car that the CI had said that there were assault rifles in the back seat that he had previously seen him. No gun was recovered, and then they go to find Dave Anglin. Right, they don't know that ahead of time. They didn't know it at the time that they approached Dave Anglin. But that necessarily they had in their mind perhaps that he had a weapon on him. They had a suspicion, but they should have graduated. If the court were to permit the police, any time they have a suspicion that someone has a weapon, to grab an individual by the hand, to forcibly remove them from the car, lay them face down in the street in the winter and handcuff them. We move beyond grabbing them. I mean, if I were in that situation or if a regional police officer were in that situation and you thought the person might be armed, what would you do? I would look at Tillman, for example, which was cited in this case. In Tillman, a bank robbery had just occurred. There were eyewitnesses who described the suspect. He was pulled over and told by loudspeaker to get out of the car, which he did. I would look at Taylor, which the government cites extensively. In that case, the indicia of the crime of criminal activity was much stronger. And so taking him out of the car, they found three men in the car in Taylor, took them out. There was a higher degree of danger to the police. So I see I'm into the rebuttal time. I'll give you some more time. Thank you. You can sit down. Good morning. May it please the Court. My name is Jonathan Koenig. I'm here on behalf of the United States in this appeal. I also prosecuted Mr. Anglin in his 2008-2009 armed bank robbery. And as I mentioned in the footnote in our brief, my office is also prosecuting the Anglin brothers for Hobbs Act robbery, with some significant factual overlap with today's case. Judge Sykes' final question for Mr. Pruse kind of underscores difficulty I have with his argument, which is that he seems to concede there was reasonable suspicion that Anglin was armed and dangerous. And yet he spends an awful lot of time talking about why the facts giving rise to suspicion are not reliable. But I might as well start there. We do think they were reliable for a number of reasons. And this is contextual, as Judge Sykes mentioned or somebody mentioned. Very fast, quickly evolving situation where the agents are presented with a situation and they have to move quickly. But here are some of the things that the confidential informant was correct about. Michael Anglin turns out to be at the apartment building identified by the confidential informant that morning. He turns out to be driving the same kind of car the confidential informant describes, the silver Acura. And Michael Anglin picks up the CI at the precise location conveyed by the CI to law enforcement. And I may not have emphasized this enough in my brief, he says Dave Anglin is at his girlfriend's house. The officers at that location go there and they see the white escalate that the informant has also talked about to law enforcement. So there are a number of things, innocent in and of themselves, that corroborate the CI. And suggest that the other facts he's providing to law enforcement are also true. Which is a good segue to talking about really the second part of the court's analysis, which is were the measures used by law enforcement appropriate in light of the concerns about an armed individual. And I'm surprised frankly that Mr. Pruse talks about the Tillman case because as I read that case, the officers did everything in that case that was done here. Plus, they cuff him and put him in a squad car and hold a shotgun to his head. And this court ultimately concluded that that was within the permissible scope of an investigatory detention. That Tillman case also talks about having someone get out of a car, making them lie down on the ground as reasonable measures when a suspect is considered dangerous. So as I said, I'm a bit surprised because I think Tillman is actually my opponent's biggest problem in this appeal. There's also Terry v. Ohio. I think we're so familiar with the formulaic parts of this decision, it's been around so long. I hadn't read it in many years and I went back and there's some very compelling prose about Justice Warren, no less, about the dangers faced by police officers in situations exactly like this. And beginning at page 23 of the U.S. reports, we are now concerned with more than the governmental interest in investigating crime. In addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. The court in Terry goes on to observe, American criminals have a long tradition of armed violence and every year in this country, many law enforcement officers are killed in the line of duty. In view of these facts, we cannot blind ourselves to the need for law enforcement to protect themselves and other prospective victims in situations where a probable cause may be lacking. Well, Anglin is also a known felon, right? I mean, he's got armed robbery. Mr. Anglin? Yes. Absolutely. He's got an armed robbery conviction. Yes. That's known to the officers. And he was actually the gunman in that robbery, which was known to Special Agent Bruce, who was part of this team on the 17th. So, Your Honors, I'm happy to answer any further questions you may have. Well, there was also an inevitable discovery aspect of this thing, too. I think so. I mean, I'm not sure that's exactly the right label, but what I keep coming back to is there's no situation here where the officers are not going to do a pat-down search of some kind and discover a weapon. So my opponent hasn't really identified precisely which measures he thinks were inappropriate or on the pale, but even if those measures hadn't been taken, there would have been a pat-down here. It would have been irresponsible policing not to do a pat-down search, I would submit. The weapon was in his waistband? Yes, sir. What type of weapon was it? I forgot. I'm sorry? What type of weapon was it? I'm sorry, Your Honor. I forget exactly what it was. No, that's all right. I think you did correctly note that there were some semi-automatic weapons referenced by the CI. Maybe that's what it was. And perhaps that's more relevant, really, in terms of the objective basis for doing what the officers did. Any other questions? We would ask you to refer him. Thank you very much for your time. Thank you, Counsel. Mr. Peters? You have one minute, but I'll give you a couple more since I posed some questions to you. So you've got three minutes. Thank you, Judge. With regard to the force that the police used in the case of Mr. Anglin, I do think Mr. Koenig indicated that I didn't identify exactly what I think it is that the police did, which overstepped. And the answer is that they grabbed him and that they put him face down on the street. And I understand that under circumstances where there is a strong indicia of reliability with regard to the information that's being acted upon by the police, that that's okay. As Judge Sykes pointed out, he's already been convicted once of armed robbery. Right. But I think there's a danger of a slippery slope if police start being able to approach anybody who's got a prior conviction for armed robbery on relatively low, reliable information and grab them and force them to lie prone in the street. Taylor, again, in many of the cases, the Tillman case, the Taylor case, the Taylor case, which is cited extensively in the government's brief, the police were working with an informant who they had been working with for years. One of the officers characterized him as being one of their best informants. That informant gave them information. They managed to follow this car, corroborate with their own eyes that there appeared to be some nefarious activity going on. There were three people in the car, three men. The informant had said that there were two pistols in the car, and the police converged and did exactly what they did here, but on that reliable information. In this case, the information was not sufficiently reliable to allow the police to engage in such aggressive behavior because the Fourth Amendment is intended to protect innocent people as well as people who might have, who the police may discover have a, it's a 9-millimeter handgun. The informant also told the police that Anglin had said that he was not going to submit to an arrest, that he was going to go to the grave rather than go to jail. So doesn't that fact loom quite large here when evaluating the reasonableness of what they did, moving in the way they did with the kind of force that they did? And I would say that, again, you'd have to look at where that information is coming from. The informant, an untested, unknown, unreliable informant. Well, you're saying unreliable. He's unknown to them before this incident, but that doesn't mean he's unreliable. He hadn't been shown to be reliable beyond innocent details that he provided. If I could just briefly address the inevitable discovery matter, there's the Nix case, which I think is the main case on inevitable discovery. In that case, the Supreme Court held that where there is an alternate lawful method of finding the evidence, that if that alternate lawful method is the means by which the evidence is discovered, exclusive of a constitutional violation, then the evidence can be admitted. In this case, the police conducted an illegal Terry stop, thereby precluding the ability for them to discover that gun in any other lawful manner. And that is why the inevitable discovery happened. Well, you've conceded that the Terry stop was legal. You're saying that they exceeded the scope. Exactly. So it was a de facto arrest where they found a gun incident to an arrest, but if they hadn't committed the violation, they wouldn't have found the gun. Well, the point is that if they wouldn't have put him on the ground, if they had conducted this within the scope that you claim was necessary, in other words, if they had just asked him to step out of the car and submit to a frisk, the gun would have been found anyway. I think that's the material point. And it would have been, and that would have been fine. But because it was found through an illegal search, which exceeded the scope permissible under Terry, then that precluded the police from any other lawful method of seizing that particular firearm. So Nix is distinct from this case in terms of the inevitable discovery doctrine. Thank you. And you were court appointed, were you, counsel? Yes, sir. You have the appreciation of the court for your fine representation. Thank you. Thank you very much. The case will be taken under advisement.